Good morning. We're here today to hear 1 matter. 23 dash 2, 1, 1, 1, United States versus Crespen. And we are ready whenever you want. Good morning. Your honors counsel. My name is Katie Donnelly, and I represent the appellant. Mr. Crespen. Mr. Crespen's appeal. Is focused on 1 issue, and that is the review of the eligibility question. For his motion motion for compassionate release. In that motion, let me interrupt you for just a minute. So, we are under abuse of discretion in terms of application. Of the factors to be considered for compassionate release. Would you agree with that? No, your honor, because the analysis has 2 parts. The 1st part is a question of eligibility and that is established case law. Dylan. Um, 560 US 817 at 826 and 27 makes it clear that the. Eligibility determination requires a de novo. Review by the appellate courts when it comes to the final question of better compassionate release was appropriate. Your honor. That is correct. But then the standard review is abuse of discretion. But right now, the focus of our arguments and this appeal have been the question of eligibility. And the eligibility piece is the part that takes us to the statutory interpretation question on their amendment 814. As to whether Mr. Crestman had any requirement to show that he was the only available. Person to take care of his son who has been diagnosed with stage 3 cancer that under our disability laws. Is automatically considered a disability. The government says, let's not go there because. At the time that the motion was filed. The, the amendment was not in effect, so the 2023 amendments and then the 18, 814. Was enacted in May of 2023 and went into effect in November. At the time, the issue was brought to the course attention by both parties. But the district court's analysis has 0 mention of its impact. Our position has been as this court has recognized. The 10 circuit has been very consistent with the Supreme Court's analysis and Bradley and the cases that we have cited, we heavily rely on Bradley, the Supreme Court decision that says this court. Applies the law that is in effect at the time that it comes to it, the government was not in effect at the time is your honor at the time that we are arguing the case today. The last, but that's not how it works. We have to determine whether or not this was a substantive change. No, your honor, that is the issue, right? So that is the issue that has been avoided in the government's briefing. We are dealing with 2 canons of statutory interpretation and that's exactly what happened in Bradley and the court makes a distinction that when you have an apparent tension. Between 2 canons of the statutory interpretation, the court looks at the language. Of the statute here, the guidelines to see if there was any intention that it would not be. Applicable to the pending cases, and I would like to highlight that piece of this that we are not talking about retroactivity retroactivity to sentencing in position of sentences. So there are 2 things that are important. 1, we are not talking about imposing a sentence. We are talking about reducing a sentence. To let me, let me stop you for a minute. Would it be your position that the district court at the time? It denied the motion did not commit error. But that that doesn't matter because we have to consider the new policy guidelines. So that is our fallback position your honor. The 1st position is that conception, which was in effect at the time, right? The Supreme Court had spoken in conception that the sentencing commission actually acknowledges. In its amendment conception was in place and the court was bound by it that you may consider any factor. And again, the highlighting piece is that we must. No, we have never taken a position that you that the court must have. It was May, but not only the court did not take the specific language that it knew was in effect. And that is where we come down to the heart of the substantive question here as to the modifications that were done. And we make a distinction between subsection A. Which does not have any requirement that my clients be the only available person to take care of his son. Versus subsection B, C and D. That specifically allowed out and as your honors are aware, the rules of stature interpretation take that into account. And the analysis is that there was no such requirement. So back to judge Carson's question. The 1st part of our argument is that conception was in place. The district court had a duty to follow its holding. There is 0 mention of conception. But 2, even if at the time that was not a mistake now, there is no question that is a mistake. And the issue is before you under Bradley, under this court started decisive in Miller, citing Bradley that. When the law has been settled, and it is settled at this moment, there is no question. This court follows the law and Bradley's analysis takes a step, one step at a time. One, we are not talking about retroactivity. There is no question that the question was pending, has been pending before the district court and this court as the law went to in effect. And the law was enacted before the motion was filed. 1, 2, because this is not about imposing a sentence. The analysis is going to be focused very much on what is the impact? Do we have any prejudicial impact on that? Well, clearly, we don't have any concerns that would arise in ex post facto cases, right? And clearly, we don't have different parties in a private case that would be prejudiced. And the government has not mentioned any prejudice arising out of the application of the current language. We are talking about. Do you think the 11th Circuit got it wrong in the United States versus Hamlin when it held? No question, Your Honor. Bradley was not discussed. The 11th Circuit's decision does not even mention the tension about these canons of interpretation. And it is focused very much on imposition. We are not talking about imposition of sentencing. We are talking about reduction of sentence. That is a completely different world. We are not in a world that's very limited in terms of the power of a court to adjust the sentence after it's been rendered, right? Very much limited, Your Honor. That is correct and tied to the language. And that's why we are talking about the statutory interpretation of the language. The language now. Would you agree that if we think the language is clarifying as opposed to substantive, that we can't give it retroactive effect? No, Your Honor. Again, because that is a test that applies when the court is imposing a sentence. The concern there is a finality, right? That we want to make sure that everybody's unequal setting when it comes to imposition of sentence and notice about what the law was and what the court is applying. You are now out of that room. If you wanted the benefit of this amendment, why not just dismiss this motion for compassionate release and file a new where you'd automatically get the benefit of the amendment? Your Honor, if my client's son was not diagnosed with stage 3 cancer, if his toddler would not be an orphan soon, probably that would have been. Get an answer faster doing what's suggested than what following this through all the way through the appeal. So if you would, I'm happy to move on to the remedy section of it. And Malone, the Fourth Circuit in three cases in a row has made it very clear that when you have a situation like this, so in Malone, in Brown and in Rorley, Malone is cited actually in the 28J that the government has submitted. Brown citation is 78F4122 and Rorley is 685F3404. Both of them are cited in Brown as well. The analysis is that when you have a situation like this, that this severity of the situation is taking the court to a position that do we want to take the chance? The district court was aware of this amendment. Both parties briefed it. Zero mention of it. Do we want to go back to the district court? Let my client's son die? Let the grandson become an orphan without proper? Ms. Donnelly, what evidence is there in the record we have that the son is incapable of self-care? So that was the issue that we tried to address Judge Murphy in our reply brief, that there is no question that he has been diagnosed with stage three cancer. The government, as far as I know, unless. That doesn't mean he's incapacitated for purposes of compassionate release. So that was the part that we tried to address in the reply brief, that this kind of cancer automatically is considered a disability. Well, I thought there was some information in the record, albeit maybe not in front of the district court. Maybe it was. There was no findings on it that the son is doing quite well. He's doing well. He's living with an uncle and he has friends and family for support. The issue was, I'm not quite sure, actually, if that is. And I apologize if I'm missing that piece of this. My understanding was that we were looking at the medical notes, and as you can imagine, the medical notes are focused on what the diagnosis was and how the patient is doing under those circumstances. The notes are from, I believe, a year before that. I'm afraid that. Are you saying it's in those notes where it says he's doing well? I'm not saying, I'm saying that he's doing well was relative to the context, which means that we are giving him the treatment. Okay, let me put it this way. Okay. Where does it say he is incapacitated? Anywhere in this record? Well, that was what I was trying to address in the reply, and Your Honor is correct. Because the court decided that since the incorrect statutory interpretation was, that if you're not the only person responsible, then we are not going to consider this. There was not an analysis of the actual situation at the time. Well, would you agree that if someone, even if you can have multiple potential caretakers, that if someone is well taken care of by other family members, that even if you can have a standard where you don't have to be the sole caregiver, that the district court could weigh the fact that there are multiple people who are already providing him care, so there's no need for compassionate release? Our position is, Your Honor, that the Sentencing Commission was aware of those situations. They have done a very thorough study of the cases that have addressed these severe circumstances. If they wanted to say that, they would have. They did it in subsection B. They did it in C. They did it in D. So your position, then, let me just, we're running out of time. So your position would be, then, that even if there's evidence of ample care for the person by other family members, that that doesn't matter? Under the new language, correct. And I would like to reserve the remainder of my time. Okay. And we are ready for you, Ms. Messick. Good morning, and may it please the court, counsel, Paige Messick for the United States. I'd like to just start by thanking the court for having the flexibility to hold this argument today by Zoom rather than last week in Denver. I really appreciate that. Moving on to the merits of the case. The district court here did not commit any sort of error in declining to apply what were then future proposed guideline amendments. In July of 2023, Judge Johnson was required to decide compassionate release motions in compliance with any applicable policy statements issued by the Sentencing Commission. And in July of 2023, there were none. Now, things have changed since then. The guideline policy statement has been amended. But this court looks only to guideline amendments that come after the district court's decision if they clarify what's always been true as opposed to being substantive changes. And here, these were substantive changes. I haven't heard any disagreement about that, just about whether this framework applies at all. So these are substantive changes. And other circuits have recognized that Amendment 814 didn't bind district courts before it took effect. The third circuit. What about the argument that these cases are wrong because they're focused on sentencing and not compassionate release? I don't think that that is persuasive. That is a distinction, although Kisik was actually a 2255 case. So that wasn't an initial sentence either. But I think there is a difference, right, between 2255 and direct appeal where you're contending that something was done wrong. But I don't think that that difference makes, I don't think that that difference helps Mr. Cressman. It makes sense to apply these clarifying amendments to somebody who's on direct appeal or on 2255 because otherwise you're letting a sentence that we know is erroneous now be set in stone. But compassionate release doesn't work that way. You can always get the benefit of a new amendment by filing a new motion in the district court. So I think the difference between these contexts actually could support the court saying here, we don't apply any kind of amendments on compassionate release review. You just have to go back to district court and try again. So I do think there is a difference. I don't think that difference helps him. What about the question that Judge Murphy asked about whether there's evidence in the record before us that the son was unable to care for himself? No, there is no evidence to that effect in the record. In fact, the evidence to the record is to the contrary. Cressman himself submitted his son's most recent medical records that stated his son was doing well. He was going to the gym for multiple hours a day. He was living with an uncle. He was with the mother of his child, help raising his own child. So the affirmative evidence is that he was even able to care for others and had friends and family support. There is no evidence that he was incapacitated. There seems to be this nagging issue raised in the filings by Mr. Cressman about what he really wants is to be able to say goodbye to his son. How does that fit in at all to our analysis of compassionate relief? It could, back before there was a binding policy statement, it could have been considered and was considered here by the district court in whether extraordinary and compelling circumstances existed. The court wasn't required to find that the fact that Mr. Cressman wants to say goodbye to his son was extraordinary and compelling. In fact, the court clearly found it wasn't. He said, you know, I'm sorry about the situation that your family members are in, but that's the sort of unfortunate consequence that follows from committing crimes and becoming incarcerated. So the district court did have that before. It could have considered it, but didn't find it to be extraordinary and compelling. I think and I don't think that Mr. Cressman now is arguing that the court was required to find that compelling. I think he's trying to sort of have in his argument or reframe his argument as now one saying, well, no, I was the only available caregiver. But I don't believe that he argued that either. And it certainly wasn't clear error for the court to find otherwise. What's the standard of review for extraordinary and compelling circumstances? I think that that standard depends on where we are in time. So back under Mau Mau and McGee, the district court had a lot of discretion to determine what extraordinary and compelling circumstances are. So and that's our position is the court should be applying that framework now. Now that there is a binding policy statement, I think that there is going to be a component of of DeNova review and compliance with the current policy statement. But we don't believe that that's an issue in this appeal. If I may just say a couple of words about the remedy, if there were to be any error here, which there is not, the appropriate step would be to remand to the district court so that it can consider the new law and any new facts. The district court here hasn't had a chance to apply the 23, 2023 amendments since they've become binding. It hasn't undertaken an analysis under 3553A. There's simply no reason to take this highly discretionary decision out of Judge Johnson's experienced hands. And Mr. Crespin, as Judge McHugh pointed out, could have filed a motion. If this was a truly an urgent matter, he could have filed a motion at any point in the more than six months that have passed since November 1st of 2023. And it may be that he doesn't like his chances in the district court. And that's why he is here asking this court to take that decision out of the district court's hands. But I don't believe he's made any kind of showing that the district court would not act appropriately or urgently were he to file a new motion. So the court should decline his invitation to take that decision from the district court who is statutorily tasked with it, even if it does find that there was an error, which it should not find. I would be happy to address any other questions that the court may have. And if there are- Hi, Mary. I thought Judge Murphy was getting ready to ask a question, but so I was waiting on him. Um, whose burden is it? I mean, we're talking about the standard of review for about whether something's extraordinary and compelling, but whose burden is it to show that in the first place? It's the defendant's burden. And I guess the defendant's position in this case would be that there's a stray statement in a handwritten letter that says, I'm the only person who can take care of my son. And I mean, despite what seems to be other evidence in the record, that there are other people who can and are taking care of him. But once the defendant makes a minimal showing such as that, a conclusory statement that they're the only person, I mean, what's, does the government have any burden or we just decided on that? I don't think in this case, what Mr. Cressman said was enough to put the government to any burden or to require the district court to hold any sort of hearing. The burden rests with Mr. Cressman. And you've got his own attorney saying things as an officer of the court in file pleadings that are directly contrary to the thing he is saying in his unsworn letter. And his statement in his letter is also fairly vague. He says, my son has no one. He doesn't actually say, I'm the only person who can take care of him. And then in his very next sentence, he says, actually, my wife is trying to take care of him. He doesn't address any of the other people in his family, anyone in his son's mother's side, uncle that he's living with, the several half-siblings he has through Mr. Cressman, Mr. Cressman's sisters. He doesn't even sort of front these possibilities or explain why they are not, they are not true possibilities. And so without even doing something so minimalist as that and sort of fleshing it out, I don't think that it transfers the burden to the government or to the district court to hold any sort of further inquiry. I think Mr. Cressman was sending such mixed messages on an issue on which he holds a burden that nothing shifted that burden to the government. If there are no further questions, then the government would just ask that this court affirm the decision of the district court. Thank you. Thank you. Ms. Donnelly, I think you have 55 seconds. Mr. Cressman is going to be out in 2025. He has served more than 10 years. It is undisputed that his son has stage three cancer and has a son whose mother has died. Yet we are spending many hours and government resources to justify keeping him in prison during these last months of his son's life. I believe these are the circumstances that justified the holding of the Supreme Court of the United States in terms of trying to remind all of us that compassionate release has a place in our system. And if this case does not qualify, I do not know which one would. So I would urge the court to look at the Fourth Circuit's holdings and follow their approach. Thank you so much for your time. Thank you. And we will take this matter under advisement. We appreciate your argument today.